IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**VELMA J. PRESTON,**

    Plaintiff,

vs.                                      CASE NO. 1:05cv18-MP/WCS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

    Plaintiff, Velma J. Preston, applied for supplemental security income benefits. Plaintiff was 53 years old at the time of the administrative hearing, has a 7th grade education, and has past relevant work as a fast food cook. Plaintiff alleges disability due to burns on the right arm and carpal tunnel syndrome of the right wrist and hand. The Administrative Law Judge found that Plaintiff retains the residual functional capacity

to perform a significant range of "light" work, but cannot do her past relevant work. Based upon testimony from a vocational expert, the Administrative Law Judge determined that with her restrictions, Plaintiff could do the work of parking lot attendant, usher, storage facility rental clerk and therefore was not disabled as defined by Social Security law. Plaintiff contends that the Administrative Law Judge erred in the evaluation of Plaintiff's testimony concerning the degree of pain that she experiences.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber

v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**

Plaintiff is right handed.  Her injuries are in her right hand.  R. 264.  Plaintiff testified that her right hand and fingers were numb.  R. 265.  She had had surgery to that hand.  *Id.*  She said she could not use her right hand and fingers at all.  R. 266.  Plaintiff further testified as follows:

> Q. Okay.  Do you have any pain in the right upper extremity? The right arm, the right hand?
>
> A. In the wrist.
>
> Q. You have pain in the wrist area?
>
> A. Yes, sir.
>
> Q. Is that the only area where you have pain?
>
> A. Yes, just in my wrist.
>
> Q. Okay. What kind of pain is it, is it sharp or dull or throbbing, burning, or something else?

A. It's like nagging – it's like a nagging, it nags and nagging pain.

Q. Is it there constantly?

A. Not all the time, it comes and goes.

Q. And what seems to bring it on?

A. If I try to lift with it, if I write, try to write, it just gives out on me sometimes. And if I try to use it, that's when it will hurt.

Q. Do you take any medication for this problem?

A. I was taking Percocet, Your Honor, but I stopped taking it–

Q. When did you stop taking it?

A. Sir?

Q. When did you stop taking Percocet?

A. About a year ago.

Q. But do you take any other kind of medication from time to time?

A. Like Tylenol or Aspirin.

Q. Does it help if your wrist bothers you?

A. Yes.

Q. Do any medications that you've taken in the past year or so, do they help – I mean, do they cause any side effects?

A. No, sir.

Q. How much can you lift with the right arm? Can you lift a gallon of milk with your right hand?

A. No, I don't have no control.

Q. Could you lift a quart of milk out of the refrigerator with the right hand?

A. No, sir.

Q. You could not?

A. No, sir.

Q. I assume, well, let me just ask you, what about your left hand, are you able to use it adequately, or do you have a problem with that?

A. I have a problem with it, because I'm right-handed, but I use my left hand the best as I could.

Q. Okay. Is it because you're left-handed instead of right-handed, is that what you're saying?

A. No, sir, I'm right-handed. I have difficulty using my left hand because I never, you know, used my left hand because I'm right-handed.

\* \* \*

Q. All right. Are you able to stand up on one position for very long?

A. Well, I could stand up for like maybe a hour, a hour-and -a-half.

Q. What about sitting, is there any problem with sitting.

A. No, sir.

\* \* \*

A. I told them I prefer to take like Tylenol or Aspirin for the pain instead of Percocet.

Q. How do they compare dealing with the pain back when you took the Percocets or taking over-the-counter drugs now?

A. The Percocets make me sleep all the time, they stop the pain, but I would feel sleepy, drowsy [inaudible]. When I take the Aspirin, I don't feel like that, I don't just sleep, it just stops the pain.

R. 267-270.

The Administrative Law Judge found that the record "does not support the claimant's testimony regarding the intensity and persistence of her symptoms, which she alleges are disabling."  R. 18.  Plaintiff contends that the Administrative Law Judge discounted Plaintiff's testimony "with no evidentiary basis for doing so."  Doc. 12, p. 16.

Pain which is reasonably attributed to a medically determinable impairment is relevant evidence for determining residual functional capacity.  Social Security Ruling 96-8p, p. 4.  Pain may affect exertional or non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

The Administrative Law Judge gave the following reasons for discounting Plaintiff's testimony as to pain and weakness in her right hand:

> The claimant testified that her medications include occasional Tylenol and aspirin, which she reported help with no side effects.  She said she vacuums, dusts a little, and does grocery shopping.  She reported she attends church each Sunday.  She said she can care for her self, mostly with her left hand.  She testified that her activities of daily living include reading, watching television.  She said she does not socialize much and goes out bi-weekly to eat.  She testified that she is going to school for her

> general education diploma and she "loves it." The claimant was in jail for possession of Cocaine in February 2004. She reportedly used to be addicted and had a relapse.

R. 18. The ALJ found from this that the Plaintiff "overstated the severity and frequency of her symptoms and limitations," and gave "little weight" to her testimony in determining her residual functional capacity. *Id.*

As reflected above, the only pain suffered by Plaintiff is in her wrist, and she takes Tylenol or Aspirin, which she said stops the pain. Plaintiff's problem with cocaine, and her relapse, is also in evidence. R. 272-273. Plaintiff testified to doing the occasional daily activities mentioned by the ALJ, and she mentioned her return to school to get her GED. R. 263-264, 271. Thus, all of these findings are supported by substantial evidence in the record.

In addition to these findings, the ALJ had reviewed the medical record. He noted that in the period from 2002 through 2004, Plaintiff had "few, if any, complaints of right arm problems," though she received health care for a number of other problems. R. 16. Cited for this are 38 pages of medical records (Exhibit 9F, R. 218-38). During these months, Plaintiff sought treatment for tooth problems, mammogram screening, allergies, back pain, and mild hyperthyroidism, but there are no notations concerning any complaints or treatment for her right hand and wrist.

Additionally, the ALJ had reviewed the findings of Dr. Lance I. Chodosh, who performed a consultative examination on June 20, 2002. R. 16. Plaintiff was treated for a grease burn on her right arm that occurred on December 25, 2001. R. 157. She received treatment over a period of a few months. R. 139-157. On June 20, 2002, Dr. Chodosh found that the burns had healed, leaving burn scars. R. 175, 177. Plaintiff,

however, reported to Dr. Chodosh that since the time of her burn injury, she had "experienced pain and limited function in the right upper extremity." R. 175. She said that she had pain in the arm, especially the right wrist. She said all of her fingers of the right hand were numb, and she said she could not use her right hand or right upper extremity in "any meaningful way." *Id*.

As he attempted to examine Plaintiff's extremities, Dr. Chodosh noted:

> Pain behavior interferes with ability to assess range of motion right shoulder, right elbow, right wrist, and fingers of right hand; all other joints have full range of motion. Notably, there is no muscular atrophy in the right upper extremity or elsewhere, and the right hand appears to have moderate callous formation in the palm, equal to the left hand, with small amount of ground-in grime, all consistent with regular and reasonably forceful use.

R. 177. Dr. Chodosh further noted:

> Motor function grossly normal, all four extremities, with strength judged 5/5 throughout, including grips. Manual dexterity could not be fairly assessed in the right hand because of pain behavior. . . .

*Id*.

Dr. Chodosh concluded that while Plaintiff's "behavior reflects severe pain," there "were no verifiable signs of impairment on examination." R. 177. Dr. Chodosh said that Plaintiff was not disabled in any way, and had the ability to "handle objects of size and weight appropriate to her size, age, and bone structure." *Id*.

The Administrative Law Judge also reviewed the treatment provided to Plaintiff by George G. Fuessner, M.D. R. 16. This treatment occurred beginning on August 22, 2002, shortly after Dr. Chodosh had conducted his examination. R. 187. Dr. Fuessner

found a positive Tinel's sign,[1] and an EMG and nerve conduction velocity studies showed median nerve entrapment at the wrist. *Id.*

Plaintiff underwent carpal tunnel release surgery by Dr. Vidya S. Jain on November 1, 2002. R. 198. The notes prior to that surgery reported that Plaintiff had numbness and tingling "in the distribution of the median nerve and also *pain when moving the thumb.*" *Id.* (emphasis added). It was also noted that Plaintiff had both carpal tunnel syndrome and de Quervain's disease as a result of the burn she suffered. R. 202. De Quervain's disease is "painful tenosynovitis[2] due to relative narrowness of the common tendon sheath of the abductor pollicis longus and the extensor pollicis brevis."[3] During surgery on November 1, 2002, the traverse carpal tunnel ligament was released. R. 199. The abductor pollicis and the extensor pollicis brevis were found to be tight and were also released. *Id.* On November 8, 2002, on a followup visit to the surgeon, it was noted that the numbness had improved. R. 200.

The Administrative Law Judge did not discuss the significance of the medical records from Drs. Fuessner and Jain. One could conclude from those records that Plaintiff had some pain in her wrist and hand when she was examined by Dr. Chodosh

---

[1] "A tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at: http://www.mercksource.com/pp/us/cns/cns_hl_dorlands.jspzQzpgzEzzSzppdocszSzuszSzcommonzSzdorlandszSzdorlandzSzdmd_a-b_00zPzhtm.

[2] Synovitis is inflammation of a synovium; it is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion within a synovial sac. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[3] DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

on June 22, 2002, but the records of Drs. Fuessner and Jain are not seriously inconsistent with Dr. Chodosh's findings.  Reading these records together, as the Administrative Law Judge implicitly did, one could reasonably find, as the Administrative Law Judge did, that Plaintiff exaggerated her experience of pain when she was examined by Dr. Chodosh.  The lack of muscle atrophy, loss of strength, and the callouses and grime in the palm of the right hand were inconsistent with Plaintiff's representations that she could not use her right hand at all, though she must have experienced some pain, as found by Drs. Fuessner and Jain.  In any event, by early November, 2002, Plaintiff had had carpal tunnel surgery and her condition had improved.  There is no evidence that the surgery was not successful in the months that followed.

**Conclusion**

Thus, considering the record as a whole, the findings of the Administrative Law Judge are based upon substantial evidence in the record, and those findings were sufficient to discount Plaintiff's pain testimony.  Accordingly, the decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 8, 2005.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**